William T. McLaughlin II, #116348
Lang, Richert & Patch
Post Office Box 40012
Fresno, California 93755-0012
(559) 228-6700 Phone
(559) 228-6727 Fax

Chad Carlock, Cal. Bar # 186184
LAW OFFICES OF CHAD CARLOCK
260 Russell Boulevard, Suite D
Davis, CA 95616
Ph: (530) 750-3000
Fax (530) 750-3533

Attorneys for Plaintiffs/Petitioners **THE ARC OF CALIFORNIA**; **UNITED CEREBRAL PALSY ASSOCIATION OF SAN DIEGO**

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO DIVISION

| | |
|---|---|
| THE ARC OF CALIFORNIA; UNITED CEREBRAL PALSY ASSOCIATION OF SAN DIEGO,<br><br>Plaintiffs/Petitioners,<br><br>v.<br><br>TOBY DOUGLAS, in his official capacity as Director of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; TERRI DELGADILLO, in her official capacity as Director of the California Department of Developmental Services; CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES; and DOES 1-100, inclusive,<br><br>Defendants/Respondents. | Case No. 2:11-CV-02545-MCE-CKD<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' VERIFIED COMPLAINT AND PETITION PURSUANT TO FED. R. CIV. PROC. 12(B)(6)**<br><br>Date: December 15, 2011<br>Time: 2:00 p.m.<br>Courtroom: 7<br>Judge: Hon. Morrison C. England, Jr.<br><br>Action Filed: September 28, 2011 |

OPPOSITION TO MOTION TO DISMISS

# INTRODUCTION

This action was filed to stop defendants from continuing to violate state and federal laws by implementing, enforcing, and/or administering budgetary measures that directly and indirectly reduce payments to community providers of services and supports to individuals with intellectual and developmental disabilities ("individuals with I/DD"). Plaintiffs contend that defendants' conduct violates federal law because the defendants' have not obtained federal approval to amend the state's Medicaid Plan and they have failed to comply with the requirements set forth in the Medicaid Act (42 U.S.C. § 1396 *et seq*.). Further, Plaintiffs contend that the defendants' actions have placed thousands of individuals with I/DD at significant risk of harm to their health, safety and well-being.

Plaintiffs' Verified Complaint and Petition contains claims for (1) injunctive relief under the Supremacy Clause, (2) injunctive relief under the Rehabilitation Act of 1973, (3) injunctive relief under the Americans with Disabilities Act, (4) injunctive relief under the California Government Code sections paralleling the ADA and Rehabilitation Acts, (5) mandamus relief under California Code of Civil Procedure § 1085, and (6) declaratory relief under 28 U.S.C. § 2201 and California Code of Civil Procedure § 1060. Defendants move to dismiss the entire complaint and all causes of action pursuant to Federal Rule of Civil Procedure 12b(6) on the grounds that plaintiffs lack standing under the Supremacy Clause to enforce § 30(A) and that plaintiffs cannot maintain their claims under the Americans with Disabilities Act, the Rehabilitation Act, or California State law.

As shown herein, defendants' arguments lack merit because they rely on legal arguments that have already been repeatedly rejected by the Ninth Circuit, as well as a number of district courts in this state. Additionally, the defendants' attempt to dispute the factual allegations in the complaint fail under the applicable standard of review for this motion. Defendants' motion should therefore be denied in its entirety.

## STANDARD OF REVIEW

In ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint, as well as all reasonable inferences reasonably drawn from them, must be deemed true and construed in favor of the plaintiff, and all doubts must be resolved in favor of the nonmoving party. *See* Livid Holdings Ltd. v. Solomon Smith Barney, Inc., 416 F. 3d 940, 946 (9th Cir. 2005); Keams v. Tempe Tech. Inst., 39 F.3d 222, 224 (9th Cir 1994); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998). A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts" which could entitle the party to relief. *See, e.g.*, Livid Holdings Ltd. v. Solomon Smith Barney, Inc., supra, 416 F. 3d at, 946; *see also* Cruz v. Beto, 405 U.S. 319, 322 (1972).

In ruling on a motion to dismiss, courts may consider judicially noticed "matters of public record outside the pleadings" under Federal Rule of Evidence 201. Mir v. Little Co. of Mary Hospital, 844 F.2d 646 (9th Cir. 1988), *citing* MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504 (9th Cir. 1986).

If a motion is granted to any extent, leave to amend must be granted unless the Court determines that the defects could not possibly be cured by amendment. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995); Cook, Perkiss & Liehe, Inc. v. Northern Cal. Collection Serv., Inc., 911 F.2d 242 (9th Cir. 1990)

## STATEMENT OF FACTS

Over a decade ago, the State of California recognized that "[w]ithout funding sufficient to recruit, train, and retain a skilled labor force, the Department puts at significant risk the health, safety, and well-being of consumers." *See* Request for Judicial Notice of Facts in Support of Plaintiffs' Motion for Preliminary Injunction [hereinafter "Plaintiffs' RJN"], Fact # 23; Exhibit F to RJN, p. 4. Despite the recognized risks to individuals with I/DD, the state has refused and continues to refuse to heed its own

warnings or to follow the recommendations of its Department of Development Services to maintain a cost-based rate system. Over the past decade the State has essentially frozen rates at the existing (inadequate) levels that existed in 2003 and, by doing so, it has knowingly woefully underfunded programs needed by disabled individuals in order to live productive and meaningful lives in their communities. Complaint ¶ 29. Since 2009, the State has worsened an already dire situation by enacting a series of direct and indirect payment reductions, including the 4.25% payment reduction, half-day billing rules, and mandatory holiday schedule challenged in this action. Complaint ¶ 29-30.

Defendants have not obtained federal approval for the cuts in payments to community providers, and they have not studied the impact of the cuts on the statutory factors set forth in Section 30(A) of the Medicaid Act. Complaint ¶ 31, *see also* Plaintiff's RJN, FACT #14 (p. 3: 21-23). Further still, defendants have failed to conduct or consider any reliable cost studies or other data prior to determining the rates of payment for providers, and did not study or review studies of the potential impact of the proposed payment reductions, as required by Section 30(A) of the Medicaid Act. *Id*.

Defendants' refusal to comply with federal law compelled plaintiffs to bring this action to enjoin further implementation and enforcement of the unlawful payment reductions, and to require the State of California to comply with the requirements of state and federal law in administering and funding its developmental disabilities service system so as to adequately meet the needs of individuals with I/DD and to avoid subjecting them to significant risks of harm.

## ARGUMENT

### I. Plaintiffs Have Standing, Both Directly and as Representatives of Their Members.

Defendants' motion only challenges the standing of plaintiff UCP of San Diego. Defendants have raised no challenge to plaintiff The Arc of California's standing in this case, presumably because of prior Ninth Circuit decisions in which the Court has ruled that associations have standing to bring

suit on behalf of its members where any of its members would have standing in their own right, the interests at stake are germane to the organization's purpose, and the relief request does not require participation of individual members. Colwell v. Dep't of Health & Human Serv., 558 F. 3d 1112, 1122 (9th Cir. 2009). More specifically, the Ninth Circuit has held that organizations of or for handicapped persons have standing to sue for injunctive relief under section 504 of the Rehabilitation Act. Greater Los Angeles Council on Deafness v. Zolin, 812 F.2d 1103 (9th Cir. 1987). The complaint plainly alleges that ensuring the proper and legal operation and adequate funding of the developmental disabilities system is consistent with the mission of The Arc of California.  Complaint ¶ 3. The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others. Leonard v. Clark, 12 F.3d 885, 888 (9th Cir. 1993).

As far as UCP San Diego, Defendants argue that as "a provider of services," UCP "lacks standing to bring this suit on behalf of beneficiaries or other providers." *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss Plaintiffs' Verified Complaint and Petition Pursuant to Fed. R. Civ. Proc. 12(b)(6) [hereinafter "Defendants' MPA"], p. 5: 19, 14. Defendants' argument lacks merit because UCP San Diego may bring this action *in its own right* as a beneficially interested party who has suffered direct harm as a result of the acts and omissions of the defendants. *See* Complaint ¶¶ 4, 32.  The Ninth Circuit has recognized that individual member facilities have standing to pursue causes of action similar to those raised here. *See* Indep. Living Ctr. of S. Cal., Inc. v. Shewry, 543 F.3d 1047, 1051 (9th Cir. 2008) [hereinafter "ILC I"].  Further still, the defendants' challenge to UCP San Diego's standing fails to consider that the objectives of this action are germane to the purpose and objective UCP San Diego of providing services to those with cerebral palsy and other developmental disabilities. *Id*. at ¶ 4.   UCP could therefore be considered to have

organizational standing for the same reasons as The Arc of California. *See* CAHF, 10-3259 CAS (MANx) at * 7 (C.D. Cal. May 5, 2011) (finding Article III standing in virtually identical circumstances).

Based on the foregoing, the allegations of the Complaint demonstrate that both plaintiffs have Article III standing as providers and as associations to prosecute this action. *See Id*.

> **II.     Defendants are Violating Federal Law by Enforcing the Budgetary Measures without Prior Federal Approval and without Complying with § 30(A).**

Any notion of the validity of the defendants' arguments that their conduct does not violate federal law is quickly dispelled by the Ninth Circuit's (very) recent decision in *Developmental Services Network v. Douglas*, Case No. 11-55851 (9th Cir. Nov. 30, 2011), *submitted herewith as* Exhibit 1 to Plaintiff's Request for Judicial Notice in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. Proc. 12(b)(6), in which the Court reviewed and reaffirmed its numerous prior decisions holding that the State was obliged by federal law to obtain prior federal approval before changing its Medicaid plan and was required to comply with the requirements of § 30(A). In pertinent part, the Court observed:

> Despite our contrary holding over the past decades, the State has allowed it economic difficulties to obnebulate its analysis and render it purblind to the simple fact that it cannot properly implement changes to its Medicaid plan before the federal government . . . has approved a submitted SPA . . . it is regrettable that the State refuses to abide by the *law* . . . (*emphasis in original*)

*See Id*. at *15.

Nevertheless, defendants' argue that "there is no study requirement under the HCBS waiver program" (Defendants' Opposition, p. 7: 13-14). This argument conflicts with controlling Ninth Circuit precedent and misstates the governing law. In Orthopaedic Hospital v. Belshe, 103 F.3d 1491, 1496 (9th Cir. 1997) [hereinafter "Orthopaedic Hospital"], the Ninth Circuit held that "the Department must rely on responsible cost studies, its own or others', that provide reliable data as a basis for its rate

setting." Subsequent cases have also consistently found cost studies to be required by § 30(A). *See, e.g.*, ILC II, 572 F.3d 644, 651-652, *cert. granted*, 131 S. Ct. 992 (2011) [hereinafter "ILC II"] ("In the absence of such cost data, the Director could not have complied with § 30(A)…").

While recognizing the aforementioned precedential authority, defendants attempt to circumvent that law by suggesting that this Court should disregard the Ninth Circuit decisions and instead adopt arguments advanced in an *amicus* brief filed by the Solicitor General in the pending Supreme Court review of ILC II. *See* Defendants' MPA, p.7: fn. 2.[1] In doing so, the defendants blatantly ignore the rule providing that "[o]nce a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself sitting *en banc*, or by the Supreme Court." Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001). The application of that rule obliges this Court to adhere to Ninth Circuit precedent holding that § 30(A) requires states to conduct or rely upon reliable cost studies in establishing payment rates. Orthopaedic Hospital, *supra*, at 1496; ILC II, *supra*, at 651-652.

As an alternative (yet equally defective) means of seeking support for its motion, defendants ask this Court to ignore or disregard the factual allegations in the Complaint setting forth the specific conduct of the defendants that violate federal law. Complaint ¶¶ 31, 32, 35 (lack of federal approval and numerous instances of Defendants' noncompliance with the substantive and procedural requirements of § 30(A)). Defendants also suggest that this Court should reject "Plaintiffs' allegations that the Defendants did not consider the health and welfare of beneficiaries." Defendants' MPA, p. 8: 1-2. The defendants' arguments lack merit because they are incongruous with the applicable standard of review governing this Court's consideration of this motion. *See discussion supra*, p. 2: 1-11. The Court cannot

---

[1] ILS II specifically noted that the U.S. Supreme Court has retreated from deferring to an agency's interpretation advanced during litigation, and accordingly no deference is appropriate for the Solicitor General's amicus brief pending before the Supreme Court. ILS II, 572 F.3d 644, 654 (9th Cir. 2009), *citing* Christensen v. Harris County, 529 U.S. 576, 586-88 (2000).

discount or ignore factual allegations merely because Defendants disagree with the assertions. Affording Plaintiffs' allegations the appropriate construction, there can be no question that plaintiffs' complaint adequately pleads the acts and omissions of the defendants that violate federal law. See particularly ¶¶ 31-32; *see also* Fed. R. Civ. Proc. 8(a)(2).

Defendants further seek support for their motion by asking the Court to accept as true its naked assertions that each of the payment reductions contain an exemption process under which a regional center can "seek as exemption from the reimbursement reductions if necessary to protect the health and safety" of consumers. Defendants' MPA, p. 8: 3-6, p. 12: 6-17. Defendants then proceed to conclude, without any support in the record or elsewhere, that as long as this exemption process is available, the payment reductions can somehow be implemented without further endangering consumers. The defendants' unsupported factual assertions carry little or no weight for purposes of the Court's determination of the motion under the applicable standard of review. Defendants' argument is not based on facts, but on their self-serving characterizations of the facts and unfounded assumptions they derive from them. Defendants ask this Court to consider their factual assertions without any evidence of the actual implementation and practical effect of the so-called exemption process – e.g., the number of the exemptions actually sought by the regional centers and the number of exemptions approved or denied by Defendants. Defendants cannot rely on such an illusory safety valve to make otherwise unlawful cuts lawful.

> **a. CMS has Not (and Cannot) Waive Compliance with § 30(A) or the Requirement of Prior Federal Approval.**

Defendants continue to conflate and misstate the requirements of the Medicaid Act and the federal HCBS waiver program by claiming that "upon CMS' approval of the waiver request… [a]ll other requirements of the Social Security Act are deemed satisfied." Defendants' MPA, p. 3: 3-4. This claim is wholly unsupported and simply untrue. Approval of a State Plan or Amendment does not

excuse compliance with § 30(A), nor does it constitute compliance.  The HCBS "waiver" program simply allows the State to receive federal funds to serve those with disabilities in the community rather than in institutional settings.  *See* 42 C.F.R. §430.25(c)(2).  Defendants' place misguided reliance on Section 430.25(g), which relates only to the approval of a "proposed program or activity" if CMS finds the application meets the requirements of the Act at the time it is submitted.  This section does not allow a state to subsequently change its reimbursement or payment rates without obtaining prior federal approval and complying with all statutory regulatory requirements, including § 30(A).  The Ninth Circuit has called the State's position "counterintuitive because it would be surprising if a state were required to adhere to a complex list of requirements on order to obtain approval of a plan in the first place, but then, perhaps immediately after approval, materially change that plan to its heart's content without having the changes themselves approved."  <u>Dev. Services Network v. Douglas</u>, supra, at *8.

### b. CMS has Not Approved a State Plan or State Plan Amendment Containing the Challenged Reductions.

The Complaint alleges, and Defendants' motion essentially concedes, that CMS has never reviewed or approved the payment reductions challenged in this case.  Complaint ¶ 31, 35.  The "approved" State Plan currently in effect (*see* Exhibit A to Declaration of James Knight in Opposition to Motion for Preliminary Injunction, Docket # 22) was approved in 2006, to cover the period from October, 2006 through September, 2011.  McKnight Declaration ¶ 4.  The State has subsequently obtained an extension of the current State Plan through December 2, 2011, but the renewal is "at cost and utilization levels approved for the fifth year of the waiver program…" *Id*. at ¶ 5, Exhibit B to McKnight Declaration, Docket #22, p. 235.  The payment reductions at issue in this case were enacted in 2009, 2010, and 2011, years *after* the operative State Plan was approved by CMS.  Accordingly, the approved plan did not contain those reductions, and CMS has not approved them.  Mr. McKnight's declaration does not even state that these reductions have *ever* been presented to CMS for approval,

since he does not provide the Court with any detail regarding the State's currently pending waiver application and instead presents only the blank application form and the instructions. *See* McKnight Declaration, ¶ 7, Exhibits C&D, Docket #22, pp. 236-692.  Thus, having not obtained prior approval, the defendants' violated federal law by implementing the payment reductions.  *See, e.g,* Exeter Memorial Hospital Association v. Belshe, 145 F3d 1106, 1108 (9th Cir. 1998).

### III. Plaintiffs May Bring this Action Directly Under the Supremacy Clause.

Defendants next contend that "neither the Supremacy Clause nor section 1983 supplies a cause of action to enforce" Section 30(A).  Defendants' MPA, p. 8: 18-19.  However, in a footnote, Defendants begrudgingly acknowledge that "the Ninth Circuit has held that the Supremacy Clause provides a vehicle for bringing these challenges in federal court."  Defendants' MPA, p. 8: fn. 3.

As noted above, the Ninth Circuit has very recently ruled that a § 1983 action may not be brought to challenge a state's violation of the Medicaid Act. Developmental Services Network v. Douglas, 9th Cir. No. 11-55851 (Nov. 30, 2011), at *14.  In that case the district court had issued a preliminary injunction precluding the State from enforcing a budgetary measure reducing reimbursement rates for intermediate care facilities for individuals with I/DD.  In vacating the district court's order, the Ninth Circuit held that providers cannot bring a cause of action under § 1983 to challenge the State's violation of the Medicaid Act.  The Court explained that the statute did not unambiguously confer a "right" on the providers to challenge the State's violation of federal law.  *Id*. at *14.

For purposes of this case, it is noteworthy that the Ninth Circuit explicitly declined to reach the issue of whether a provider could challenge the State's conduct based on the Supremacy Clause.  The Court observed that the district court's order "did not even touch on that issue" and that a determination on that issue would not affect the Court's decision.  *Id*. at *14-15, fn. 29.  Accordingly, the prior

decisions by the Ninth Circuit recognizing the right of private parties (like the plaintiffs here) to maintain an action under the Supremacy Clause continue to have binding precedential authority.[2] Orthopaedic Hospital, *supra*, at 1496; ILC II, *supra*, at 651-652; *see also* Hart v. Massanari, 266 F.3d 1155, 1171 (9th Cir. 2001) ("Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved, unless overruled by the court itself siting *en banc*, or by the Supreme Court"). The Ninth Circuit held in both ILC I and ILC II that no statutory private right of action is necessary to sue for a violation of § 30(A) under the Supremacy Clause, and thus plaintiffs' claims brought under the Supremacy Clause remain valid. ILC I, 543 F.3d 1047, 1051 (9th Cir. 2008); *see also* ILC II 572 F.3d 644, 654 (9th Cir. 2009), *cert. granted*, U.S.S.C. Case No. 09-9548.[3] ; CAHF, Case No. CV 10-3259, Order, at 8 (C.D. Cal. May 5, 2011); California Hospital Association v. Maxwell-Jolly, Case No. CV 03465, Memorandum and Order, at 44 (E.D. Cal. March 4, 2011) (hereinafter "CHA").

Here, unless and until there is a ruling denying a private right of action for enforcement under the Supremacy Clause, Plaintiffs have the right to avail themselves of well-settled case law. *CAHF*, 10-3259 CAS (MANx), at * 9 (C.D. Cal. May 5, 2011); see Hart v. Massanari, *supra*, 266 F.3d at 1171. In denying the defendants' motion, the Court would merely be following well-settled law that a direct claim under the Supremacy Clause may be used to challenge a violation of § 30(A).

---

[2] Plaintiffs also allege that the above-mentioned legislation is in violation of Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794 *et seq*.); the Americans with Disabilities Act (42 U.S.C. § 12131); and the Unruh Civil Rights Act (Cal. Civil Code § 51 *et seq*.)

[3] Numerous other Courts have reached the same conclusion. *See* Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96 n.14, 103 S. Ct. 2890, 77 L. Ed. 2d 490 (1983); Bud Antle, Inc. v. Barbosa, 45 F.3d 1261, 1269 (9th Cir. 1994) ("Even in the absence of an explicit statutory provision establishing a cause of action, a private party may ordinarily seek declaratory and injunctive relief against state action on the basis of federal preemption."); see also Lankford v. Sherman, 451 F.3d 496, 509-10 (8th Cir. 2006); Planned Parenthood of Houston & Se. Tex. v. Sanchez, 403 F.3d 324, 331-35 (5th Cir. 2005); Local Union No. 12004, United Steelworkers of Am. v. Massachusetts, 377 F.3d 64, 75 (1st Cir. 2004); Pharm. Research & Mfrs. of Am. v. Thompson, 360 U.S. App. D.C. 375, 362 F.3d 817, 819 n.3 (D.C. Cir. 2004); Pharm. Research & Mfrs. of Am. v. Concannon, 249 F.3d 66, 73 (1st Cir. 2001), *aff'd sub nom*. Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644, 123 S. Ct. 1855, 155 L. Ed. 2d 889 (2003); Ill. Ass'n of Mortgage Brokers v. Office of Banks & Real Estate, 308 F.3d 762, 765 (7th Cir. 2002); St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 241 (3d Cir. 2000);Village of Westfield v. Welch's, 170 F.3d 116, 124 n.4 (2d Cir. 1999); Burgio & Campofelice, Inc. v. New York State DOL, 107 F.3d 1000, 1005-07 (2d Cir. 1997).

### IV. Plaintiffs State Viable Claims under the ADA and the Rehabilitation Act

Defendants challenge plaintiffs' causes of action under the ADA and the Rehabilitation Act on the grounds that neither organization is "disabled" under the ADA or "handicapped" under the Rehabilitation Act. *See* Defendants' MPA, p. 9-10. Defendants' argument is flawed because it rests on standing restrictions or limitations not found in either Act and, in addition, it conflicts with case law holding that standing under both Acts is to be construed "as broadly as possible" and as coterminous with Article III standing. *See, e.g.*, Barker v. Riverside County Office of Educ., 584 F.3d 821, 825-26 (9th Cir. 2009). There is no requirement that an ADA or Rehabilitation Act plaintiff be disabled or even have "a close relationship to a disabled person." Barker, *supra*, at 826.

The Rehabilitation Act states that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.] shall be available to *any person aggrieved* by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title." 29 U.S.C. § 794a(a)(2) (*emphasis added*). In Trafficante v. Metropolitan Life Ins., 409 U.S. 205 (1972), the Supreme Court held that "person aggrieved" meant "any person who claims to have been injured". Similarly, the ADA provides a cause of action for "any person alleging discrimination on the basis of disability." *See, e.g*, Transport Union Workers of America v. New York City Transit Authority, 342 F. Supp. 2d 160 (S.D. N.Y. 2004); *citing* 42 U.S.C. §12133. It therefore plainly appears that *any person* claiming to be injured or aggrieved by disability discrimination has standing to sue under the ADA and the Rehabilitation Act, and that there is no requirement that the plaintiff be disabled or that they themselves be excluded from participation in a program. Plaintiffs in this case allege that they are aggrieved by the State's disability discrimination, and thus have standing under both the ADA and the Rehabilitation Act. Complaint ¶¶ 38, 39, 42, 47.

The severity or degree of disability is itself a "handicap" under the Rehabilitation Act, and therefore a program or method of administration that has a disparate impact on consumers with more significant disabilities (and hence greater care needs) is discriminatory. *See* Wagner v. Fair Acres Geriatric Center (3d Cir. 1995) 49 F.3d 1002, 1017, n. 15, *citing* Clark v. Cohen, 613 F. Supp. 684, 693 (E.D. Penn. 1985) (holding that the claim of a denial of access to a program based on the relative aspects of a handicap qualifies under section 504); Jackson by Jackson v. Fort Stanton Hospital and Training School, 757 F. Supp. 1243 (D. N.M.), *rev'd in part on other grounds*, 964 F.2d 980 (10th Cir. 1992) (holding the failure of programs for the developmentally disabled to accommodate the severely handicapped in existing community programs while serving less severely handicapped persons is unreasonable and discriminatory because the severity of plaintiff's handicaps is itself a handicap which, under section 504, cannot be the sole reason for denying access to community programs); Plummer by Plummer v. Branstad, 731 F.2d 574, 578 (8th Cir. 1984) (the severity of the plaintiffs' handicaps is itself a handicap which under section 504 of the 1973 Rehabilitation Act cannot be the sole reason for denying them Title XX funding)." The Complaint alleges that the payment reductions challenged in this action will have a disproportionate and discriminatory impact on those with more significant needs. Complaint ¶¶ 38, 39, 41, 42, 47, 48.

Defendants ignore allegations throughout the Complaint by claiming that "Plaintiffs' argument is devoid of any reference to specific harm suffered by providers or consumers…" (Motion to Dismiss, p. 12: 13-14.)  The Verified Complaint, in paragraphs 32, 33, 38, 39, 42, 43, 44, 47, 49, 59 and 60, detail the impacts that the subject payment reductions have already had, as well as the imminent threat of program degradation and closure that will result if relief is not granted.  Furthermore, as this is merely a motion to dismiss, evidence of such actual harm is not required; all that is necessary in order to survive a motion to dismiss are *allegations* of harm.  Plaintiffs have amply met that minimal burden.

Defendants also seek support for their motion by pointing out that not all of the services provided under the Lanterman Act are federally funded. Defendants' MPA, p.11: 16-17. However, as a *program* that receives federal funding, the state's entire developmental disabilities services system must be administered in a non-discriminatory manner, not only the portion that receives federal funding. *See* 28 C.F.R. §35.150(a) ("A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities.") It is therefore irrelevant that there are consumers who receive services that are not federally funded.

### V.     Plaintiffs' State Law Claims for Injunctive, Mandamus and Declaratory Relief are Not Barred by the Eleventh Amendment.

Defendants contend that plaintiffs' state law claims (the Fourth, Fifth, and Sixth Causes of action) "are not appropriate in federal court," because they are "barred by the doctrines of sovereign immunity and the Eleventh Amendment." Defendants' MPA, p. 12: 21-22, 25. As with Defendants' other contentions, this argument has also been previously heard and rejected. It is certainly true that the 11th Amendment bars claims for monetary damages against states brought in federal courts. *See, e.g*, Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989). However, sovereign immunity does not bar actions for prospective injunctive relief. ILC II, 572 F.3d 644, 660 (9th Cir. 2009), *citing* Ex parte Young, 209 U.S. 123, 156, (1908). This is true even where the relief awarded may have an "ancillary effect" on the State treasury. *Id*., *citing* Edelman v. Jordan, 415 U.S. 651, 667-68 (1974). Plaintiffs are not seeking a retroactive award of money damages, and thus the 11th Amendment does not shield Defendants.

Defendants concede that these claims would be properly brought in State court, which is precisely why Plaintiffs have filed them as pendent state law claims in this federal lawsuit – to consolidate and avoid duplicative actions involving the same operative facts and law in two different

forums simultaneously.  For example, California Government Code § 11135 (upon which the Fourth Cause of Action is based) is virtually identical to the prohibition of discrimination contained in the Rehabilitation Act.  *See* D.K. v. Solano County Office of Educ., 667 F. Supp. 2d 1184, 1190–91 (E.D. Cal. 2009). Similarly, courts have held that § 1085 of the California Code of Civil Procedure allows a party to challenge violations of the Medicaid Act so long as the party is "beneficially interested" within the meaning of Cal. CCP § 1086.  *See* Mission Hospital Regional Medical Center v. Shewry, 168 Cal. App. 4th 460, 478-80 (3d Dist. 2008).  Given the state's expressed concerns over litigation costs, it makes little sense for it to want to defend this action simultaneously in both state and federal courts. Conversely, it makes legal, logical, and practical sense to permit Plaintiffs to bring their parallel state law claims in this action.

> **VI.    Declaratory Relief is Appropriate and Necessary in this Action to Make Inescapably Clear to the State of California that it May Not Continue to Intentionally and Deliberately Violate Federal Law to the Detriment of Individuals with I/DD.**

Finally, defendants urge this Court to "decline to exercise its discretion to give declaratory relief …" Defendants' MPA, p.14: 5.  Frankly, whether or not declaratory relief should or should not be granted is not before the Court on defendants' motion to dismiss.  There can be no question that Plaintiffs are entitled to *seek* declaratory relief as a remedy under both federal law (42 U.S.C. § 2201) and state law (Cal. Code Civ. Proc. § 1060).  It is immaterial that the Federal Declaratory Judgment Act does not in itself confer jurisdiction, insofar as plaintiffs have already shown that jurisdiction exists. Defendants' assertion that "several of the primary issues raised in this case" are somehow unclear is disingenuous given that the applicable law is clear and well-settled. Defendants' MPA, p. 15: 1.  The Ninth Circuit has just noted, with considerable consternation, that the State of California "refuses to abide by the law." Developmental Services Network v. Douglas*, supra*, at *15.

For the foregoing reasons, Defendants' arguments do not warrant dismissal of plaintiffs' Sixth Cause of Action and the motion to dismiss should be denied. To the extent that defendants are asking the Court to decline to issue a declaratory judgment, defendants' arguments are premature and should be ignored.

**CONCLUSION**

In its motion to dismiss pursuant to FRCP 12(b)(6), the State of California rehashes a series of arguments that have already been repeatedly heard and rejected by numerous District Courts as well as the Ninth Circuit. While it is true that the use of the Supremacy Clause to challenge violations of § 30(A) is currently pending before the U.S. Supreme Court, that does not change the fact that well-settled, binding Ninth Circuit precedent supports Plaintiffs' legal theories. Accordingly, the motion to dismiss must be denied in its entirety.

Dated: December 1, 2011

        LANG, RICHERT & PATCH, P.C.

        By: /s/ William T. McLaughlin II
           William T. McLaughlin II
           Attorney for Plaintiffs

Dated: December 1, 2011

        LAW OFFICES OF CHAD CARLOCK

        By: /s/ Chad Carlock
           Chad Carlock
           Attorney for Plaintiff

###