UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ARC OF CALIFORNIA; UNITED CEREBRAL PALSY ASSOCIATION OF SAN DIEGO,<br><br>    Plaintiffs,<br><br>    v.<br><br>TOBY DOUGLAS, in his official capacity as Director of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICE; TERRI DELGADILLO, in her official capacity as Director of the CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES; and DOES 1-100, inclusive,<br><br>    Defendants. | No. 2:11-cv-02545-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

----oo0oo----

Through this action, Plaintiffs, a consortium of home health care providers, sue the State of California on grounds that the State's payment reductions affecting services to intellectually and developmentally disabled individuals (I/DD) run afoul of federal Medicaid provisions governing how states participating in the Medicaid program can use federal dollars.

1

1     This case was originally filed on September 28, 2011.  On
2 October 19, 2011, Plaintiffs filed a Motion for Preliminary
3 Injunction and that Motion was countered by a motion to dismiss
4 submitted on behalf of the State on November 11, 2011.  On
5 December 13, 2011, this Court stayed these proceedings pending
6 the outcome of a United States Supreme Court case, as well as
7 several anticipated regulatory amendments that appeared to be
8 potentially dispositive in adjudicating certain of the claims
9 presented by this litigation.  Because those clarifications did
10 not in fact materialize as anticipated, Plaintiffs moved to lift
11 the stay, and the Court issued an order to that effect on
12 August 22, 2012.
13     On September 25, 2012, after the case was reactivated, the
14 State renewed its motion to dismiss, and that motion is currently
15 scheduled for oral argument on December 13, 2012.  Plaintiffs
16 have also filed a motion for sanctions against the State for
17 failure to comply with the terms of the Court's previous order
18 lifting the stay in this matter.  That motion is also scheduled
19 to be heard concurrently with the Motion to Dismiss on
20 December 13, 2012.
21     Presently before the Court is Plaintiffs' Ex Parte
22 Application, filed November 12, 2012, for an Order to Show Cause
23 as to why a Temporary Restraining Order/Preliminary Injunction
24 should not be issued.  That Application tracks to a great extent
25 the previously filed motion for preliminary injunction filed in
26 October of 2011 before the case was initially stayed.
27 ///
28 ///

2

The key difference, as discussed below, is that Plaintiffs request now that an emergency temporary restraining order be issued as opposed to a preliminary injunction request made by regularly noticed motion.  On November 16, 2012, this Court entertained oral argument as to the propriety of a temporary restraining order under the circumstances.  The Court denied Plaintiffs' ex parte application from the bench, and this Order supplements that oral ruling.

## STANDARD

The purpose of a temporary restraining order is to preserve the status quo pending the complete briefing and thorough consideration contemplated by full proceedings pursuant to a preliminary injunction.  See Dunn v. Cate, 2010 WL 1558562 at *1 (E.D. Cal. 2010) ("A temporary restraining order is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction").

Issuance of a temporary restraining order, however, as a form of preliminary injunctive relief, is an extraordinary remedy, and Plaintiffs have the burden of proving the propriety of such a remedy by clear and convincing evidence.  See Mazurek v. Armstrong, 520 U.S. 968, 972 (1997); Granny Goose Foods, Inc. v. Teamsters, 415 U.S. 423, 442 (1974).  In general, the showing required for a temporary restraining order and a preliminary injunction are the same.  Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc., 240 F.3d 832, 839 (9th Cir. 2001).

///

1     As recognized by the Supreme Court in <u>Winter v. Natural</u>
2 <u>Resources Defense Council</u>, 129 S. Ct. 365 (2008), the party
3 requesting preliminary injunctive relief must show that "he is
4 likely to succeed on the merits, that he is likely to suffer
5 irreparable harm in the absence of preliminary relief, that the
6 balance of equities tips in his favor, and that an injunction is
7 in the public interest." <u>Stormans, Inc. v. Selecky,</u> 586 F.3d
8 1109, 1127 (9th Cir. 2009) (quoting <u>Winter</u>, 129 S. Ct. at 374.
9     Alternatively, under the so-called sliding scale approach, as
10 long as the Plaintiffs demonstrate the requisite likelihood of
11 irreparable harm and show that an injunction is in the public
12 interest, a preliminary injunction can still issue so long as
13 serious questions going to the merits are raised and the balance
14 of hardships tips sharply in Plaintiffs' favor.  <u>Alliance for Wild</u>
15 <u>Rockies v. Cottrell</u>, 2010 WL 3665149 at *4-8 (9th Cir. Sept. 22,
16 2010) (finding that sliding scale test for issuance of preliminary
17 injunctive relief remains viable after <u>Winter</u>).
18     The propriety of a temporary restraining order, in
19 particular, hinges on a significant threat of irreparable injury
20 (<u>Simula, Inc. Autoliv, Inc.</u>, 175 F.3d 716, 725 (9th Cir. 1999))
21 that must be imminent in nature.  <u>Caribbean Marine Serv. Co. v.</u>
22 <u>Baldridge</u>, 844 F.2d 668, 674 (9th Cir. 1988).
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

4

**ANALYSIS**

With respect to issuance of an emergency temporary restraining order, as the above-stated standard makes clear, Plaintiffs must demonstrate a significant threat of imminent, irreparable injury. The Court concludes that Plaintiffs have not met that rigorous burden. In addition, the time frames attendant to the reimbursement cuts they challenge, as well as Plaintiffs' own prior motion for preliminary injunction, militate against issuing a TRO.

Plaintiffs seek to enjoin spending bills that were enacted by the California Legislature as long ago as 2009. Plaintiffs initially challenged a 3 percent reduction in reimbursement effective February 1, 2009 that was increased by another 1.25 percent effective July 1, 2011. Those reductions were subsequently extended through June 30, 2012 by AB 104 (enacted June 30, 2011) which also established the half-day billing rule. Under that rule, if a consumer was present less than 65 percent of a program day, the facility providing services would be limited to payment for a half day, only. Finally, the last bill challenged by Plaintiffs, ABX 49, sets forth 14 unpaid holidays for which vendors are not reimbursed for any services. That bill was filed on July 28, 2009.

The 4.25 percent reimbursement reduction expired by its own terms on June 30, 2012. A new 1.25 percent reduction, however, was implemented by AB 427, filed on June 27, 2012.

///
///

5

That 1.25 percent reduction remains in effect, along with the half day and unpaid holiday provisions which are the subject of Plaintiffs' present request for injunctive relief.

Plaintiffs' basic argument is, and always has been, that these reimbursement cuts threaten their ability to continue providing essential home health services to the disabled community. Plaintiffs allege that the incremental nature of continuing these cuts may force them fiscally over the edge. From the perspective of the requested temporary restraining order, however, these arguments are nothing new. Plaintiffs have not alleged that if a temporary restraining order is not granted any specific imminent harm will result. At the time of the hearing, counsel for Plaintiffs virtually conceded that there was no such imminent harm with respect to the providers themselves. While counsel did continue to maintain that consumers may be affected if they do not receive the services they need due to continuing spending cuts, that argument amounts to little more than speculation, and cannot entitle Plaintiffs to the emergency injunctive relief represented by a temporary restraining order. Where a claim relies upon a period of speculative contingencies, the "imminent" harm required for injunctive relief is simply not present, and Plaintiffs may not even be able to present a justiciable controversy. See, e.g., Lee v. State of Oregon, 107 F.3d 1382, 1389 (9th Cir. 1997) (quoting Nelson v. King County, 895 F.2d 1248, 1252 (9th Cir. 1990).

///
///
///

Significantly, Plaintiffs virtually conceded the lack of imminent harm required for the extraordinary remedy of a temporary restraining order given their previous motion for preliminary Injunction filed in October of 2011. That motion was made on the same three grounds (the reimbursement reduction, the half day rule and the unpaid holidays) that are now again before this Court. Plaintiffs did not request the emergency remedy encompassed by a temporary restraining in 2011, and there is nothing about the present application that justifies a different result.[1]

Other timeliness considerations point to the same conclusion. As indicated above, the Court lifted its prior stay as to these proceedings on August 22, 2012, at which time the previous 4.25 percent reduction had expired and the now-in-effect 1.25 reduction was already implemented. The other two issues (the half-day rule and mandatory holidays) had been in effect since 2011 and 2009, respectively. At a minimum, then, the challenged reductions were squarely in place by August 22, 2012, when the stay of this case was lifted, yet Plaintiffs waited until November 12, 2012, nearly three months later, to file their request for a temporary restraining order. In essence Plaintiffs ask the Court to grant relief on an expedited, emergency basis when they did not act expeditiously in requesting relief themselves. Such a long delay in seeking preliminary injunctive relief itself "implies a lack of urgency and irreparable harm." Oakland Tribune, Inc. v. Chronicle Pub. Co., Inc., 762 F.2d 1374, 1377 (9th Cir. 1985).

---

[1] Indeed, if anything, the fact that the previously in place reimbursement reduction of 4.25 percent has now been replaced by a 1.25 percent cut suggests that the present situation is less dire for providers than it was in 2011.

7

**CONCLUSION**

Given the considerations outlined above, and for the reasons stated on the record at the time of the November 16, 2012 hearing, Plaintiffs' Ex Parte Application for an Order to Show Cause re: Temporary Restraining Order (ECF No. 78) is DENIED. Plaintiffs' alternative request for a preliminary injunction shall, however, be heard by regularly noticed motion. That motion is set to be heard on January 10, 2013, at 2:00 p.m. in Courtroom No. 7. Opposition and reply, if any, to the motion shall be filed in accordance with the provisions of Eastern District Local Rule 230(c) and (d). In addition, the hearings on the State's Renewed Motion to Dismiss (ECF No. 53) and Plaintiffs' Motion for Sanctions (ECF No. 59) are continued from December 13, 2012, to January 10, 2013, so as to be heard concurrently with Plaintiffs' preliminary injunction request.

IT IS SO ORDERED.

Dated: November 20, 2012

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE