UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ARC OF CALIFORNIA; UNITED CEREBRAL PALSY ASSOCIATION OF SAN DIEGO, | No. 2:11-cv-02545-MCE-CKD |
| Plaintiffs, | **MEMORANDUM AND ORDER** |
| v. | |
| TOBY DOUGLAS, in his official capacity as Director of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; TERRI DELGADILLO, in her official capacity as Director of the California Department of Developmental Services; CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES; and DOES 1-100, inclusive, | |
| Defendants. | |

The present lawsuit challenges several changes California has implemented with respect to its payment for services provided to developmentally disabled individuals under the federally funded Medicaid program.  Plaintiffs are the ARC of California ("ARC") and the Cerebral Palsy Association of San Diego ("CPA").[1]  ARC is a statewide

---

[1] Unless otherwise noted, both ARC and CPA will be collectively referred throughout this Memorandum and Order as "Plaintiffs."

1

organization comprised of individuals with intellectual and developmental disabilities ("I/DD"), their families, and their home and community-based service providers. CPA is a non-profit organization serving the needs of individuals with cerebral palsy in San Diego and is affiliated with the National Cerebral Palsy Association.

Defendants California Department of Health Care Services ("DHCS") and the California Department of Developmental Services ("DDS"),[2] are both involved in administering the provision of support provided to disabled individuals. According to Plaintiffs, Defendants have violated federal law in reducing certain payments to the providers of those services. By way of their first claim for relief, Plaintiffs assert that Defendants violated the provisions of the Medicaid Act by administering its payments for community-based services to the disabled absent compliance with the provisions of 42 U.S.C. § 1396(a)(30)(A) ("Section 30(A)"). Given those alleged violations, Plaintiffs seek to enjoin California from continuing to enforce certain mandatory unpaid holidays for providers by way of a "uniform holiday schedule." Plaintiffs further seek to prevent the State from continuing to implement the so-called "half day billing" rule, which prevents providers from being reimbursed for a full day of services should a client elect to leave early for whatever reason, even if the providers have to maintain a full day slot for providing services to the individual.

Presently before the Court is Plaintiffs' Motion for Partial Summary Judgment as to their first claim alleging violations of the Medicaid Act.[3] Plaintiffs contend that because Defendants' reimbursement reductions fail to comply with Medicaid requirements, they are patently invalid and must be enjoined. As set forth below, the Court agrees. Plaintiffs' Motion is thus granted.[4]

---

[2] Both California agencies are sued through their respective Directors and will be collectively referred to as "Defendants" or the "State" throughout this Memorandum and Order unless otherwise specified.

[3] While Plaintiffs also allege various additional claims under both federal and state law, the present motion pertains only to Plaintiff's Medicaid claims as set forth in the first claim for relief.

[4] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing in accordance with E.D. Local Rule 230(g).

## BACKGROUND

Medicaid is a cooperative federal state program designed to provide, pursuant to the Medicaid Act, federal assistance to participating states for the costs of providing medical treatment and services to the poor, elderly and disabled. 42 U.S.C. § 1396. Although state participation is voluntary, if a state does participate it must comply with the Medicaid Act and its implementing regulations promulgated by the Secretary of Health and Human Services ("HHS"). Wilder v. Va. Hosp. Ass'n, 496 U.S. 498, 502 (1990). Administration of the Medicaid program, however, is entrusted by HHS to the Center for Medicaid Services ("CMS").

A state choosing to participate in the Medicaid program must prepare and submit a "State Plan" for federal approval that includes a comprehensive written statement describing the nature and scope of its Medicaid program. A State Plan must also contain assurances that it will be administered in accordance with the dictates of Medicaid law. Wilder v. Virginia Hospital Assn., 496 U.S. 498, 502. Additionally, if a state wants to change its Medicaid plan once approved, it must obtain approval from CMS to do so in the form of a so-called State Plan Amendment ("SPA"). Exeter Memorial Hosp. Ass'n v. Belshe, 145 F.3d 1106, 1108 (9th Cir. 1998).

Among the prerequisites to participation in the Medicaid program is compliance with the requirements set forth within Section 30(A), which requires, inter alia, that payment for services to the disabled be consistent with "efficiency, economy, and quality of care." Additionally, in 1981, Congress responded to the large percentage of Medicaid resources being used for long-term institutional care for the disabled by authorizing a home and community based services ("HCBS") waiver program. 42 U.S.C. § 1396n. Development of that program was prompted by studies showing that many disabled persons then residing in institutions could in fact live at home, or in the community, if additional support services were available. The HCBS waiver program is designed to make such services available to those who would benefit from less restrictive care, but

1  who otherwise would be eligible for Medicaid benefits only in an institutional setting.  Id.
2  at § 1396n(c)(1).
3        In California, the DHCS is the state agency responsible for administering the
4  federal Medicaid program, known as Medi-Cal.  The DDS, however, is responsible for
5  coordinating the provision of services and supports for individuals with developmental
6  services for those covered under the HCBS waiver, as well as under California's
7  Lanterman Act, Cal. Welf.& Inst. Code §§ 4500, et seq., which provides for similar
8  services and supports at the state's own expense.  DDS is accordingly charged with
9  monitoring the 21 regional centers in California who contract out services for compliance
10 with both federal and state law and to ensure that high quality services and supports are
11 being provided.  Id. at § 4434(a)-(b), 4500.5(d), 4501.  DDS is further charged with
12 promoting uniformity and cost-effectiveness in the operation of regional centers.  Ass'n
13 for Retarded Citizens v. Dept. of Developmental Servs., 38 Cal. 3d 384, 389 (1985).
14       Plaintiffs' lawsuit challenges four bills, as enacted by the California Legislature
15 since 2009, which operate to reduce of freeze rates to HCBS providers.  The first two
16 bills made percentage reductions in provider rates. Using payment levels from 2003, the
17 Legislature initially enacted a three percent reduction from those rates effective
18 February 1, 2009, through June 30, 2010.  That reduction, along with an additional
19 1.25 percent cut, was ultimately extended through June 30, 2012.  After June 30, 2012,
20 the reimbursement reduction was decreased to only 1.25 percent, where it remained
21 until June 30, 2013, at which time it expired entirely and was not reenacted.  Any
22 challenge to this percentage reduction claim is consequently now moot.  ARC of
23 California v. Douglas, et al, 757 F.3d 975, 982 (9th Cir. 2014).
24       The third bill, as codified at California Welfare & Institutions Code section 4692,
25 enumerates14 unpaid holidays over the course of each year for which vendors are not
26 reimbursed for many services. That bill has been termed as the "uniform holiday
27 schedule."  Fourth and finally, the so-called "half-day billing rule" limits regional centers
28 to payment for only a half day if a patent was present less than 65 percent of a program

4

day. See Cal. Welf. & Inst. Code § 4690.6. The State maintains that those reductions apply to all disabled individuals irrespective of whether they qualify for services under the HCBS waiver or under California's Lanterman Act.

This case was initially stayed pending the outcome of the Supreme Court's grant of certiorari in Douglas v. Independent Living Center of Southern California, Inc., 132 S. Ct. 1204 (2012). Once that stay was lifted, Plaintiffs moved for a preliminary injunction on various grounds, including allegations that the State's billing reductions violated the Medicaid Act. Defendants concurrently moved to dismiss Plaintiffs' Medicaid Act claims on grounds that those claims lacked merit. Both motions were denied by separate orders issued this Court on July 1, 2013. ECF Nos. 119, 120. Plaintiffs appealed the Court's preliminary injunction ruling on July 29, 2013, and by its decision filed June 30, 2014, the Ninth Circuit reversed and remanded for further proceedings. ARC of California, 757 F.3d 975. Thereafter, on October 10, 2014, in light of the Ninth Circuit's ruling, Plaintiffs filed the present motion for partial summary judgment as to their Medicaid Act claim.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a

motion for partial summary judgment is the same as that which applies to a motion for summary judgment.  See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323.  If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Id. at 251 (quoting

Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Plaintiffs contend that the State failed to comply with the rate setting requirements set forth in Section 30(A), which requires that a state plan for medical assistance under the Medicaid Act must:

> provide such methods and procedures relating to the utilization of, and the payment for, care and services available under the plan… as may be necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A).

The Ninth Circuit, in Orthopaedic Hospital v. Belshe, interpreted this statutory mandate as meaning that "payments must be sufficient to enlist enough providers to

1  provide access to Medicaid recipients." 103 F.3d 1491, 1496 (9th Cir. 1997). The court
2  in Orthopaedic further found that DHCS "must set hospital outpatient reimbursement
3  rates that bear a reasonable relationship to efficient and economical hospital's costs of
4  providing quality services," and that in making such determinations it must rely on
5  "responsible cost studies" that "provide reliable data as a basis for its rate setting." Id.
6  Plaintiffs allege the State has done nothing to ascertain whether the challenged payment
7  reductions are consistent with federal rate-setting standards and requirements.
8        Although this Court felt that the lengthy content of California's 2012 application
9  under the HCBS waiver program sufficed for purposes of Section 30(A)'s mandate that
10 payments be consistent with efficiency, economy, and quality of care, and while the
11 Court concluded that a formal SPA amendment reflecting the provider reductions was
12 therefore not necessary, the Ninth Circuit disagreed. It found the HCBS waiver
13 application materials were "not directly relevant to the considerations enumerated in
14 Section 30(A)" because they did not directly disclose the recently implemented uniform
15 holiday schedule or the new half-day billing rule. ARC of California, 757 F.3d at 988-89.
16 Accordingly, according to that court, no deference to CMS' approval of the application
17 was warranted. Id. at 989. Aside from that application, the Ninth Circuit specifically
18 noted that state officials did not dispute the fact that "California did nothing whatever to
19 study the likely effects . . . on the 'efficiency, economy, and quality of care' or the
20 availability or service providers, before enacting and implementing [the provider
21 reductions at issue." Id. at 988. (emphasis in original). According to the court, it could
22 "not condone such complete abdication" of the State's responsibilities under Rule 30(A).
23 Id.
24       The Ninth Circuit was equally clear in explaining what California had to do before
25 implementing policies, like the two payment reductions at issue herein, that affect the
26 payments service providers receive under its plan:
27 ///
28 ///

8

> For over thirty years, we have repeatedly held that a state must submit such an SPA and obtain approval <u>before</u> implementing any material change in a plan. See Developmental Servs., 666 F.3d at 545-46 (collecting cases); see also 42 C.F.R. § 430.12(c)(1)(ii). Consequently, a, "'[a state] law that effects a change in payment methods without [federal] approval is invalid.'" Developmental Servs., 666 F.3d at 545 (quoting Or. Ass'n of Homes for the Aging, Inc. v. Oregon, 5 F.3d 1239, 1241 (9th Cir. 1993).

Id. at 984 n.4 (emphasis in original).

The Ninth Circuit's finding here -- that a state law is invalid if it changes payment criteria without federal approval of an SPA -- is particularly significant for purposes of resolving Plaintiffs' instant motion. Since it is undisputed that no such approval was obtained (a fact both noted in the Ninth Circuit opinion and expressly conceded by Defendants as undisputed herein),[5] the Ninth Circuit's holding makes it plain that the State's rules enacting the half-day billing rule and uniform holiday schedule are invalid.

Given this finding of invalidity, the payment reductions at issue obviously do not comport with the Medicaid Act, and Plaintiffs are accordingly entitled to determination as a matter of law that those practices are in violation of the Act. While Defendants devote a substantial portion of their briefing to the contention that Plaintiffs are still not entitled to a permanent injunction without showing that each of the four prerequisites ordinarily attendant to such injunctive relief have been satisfied,[6] in the context of the present matter both common sense and the applicable case law point to a conclusion that a permanent injunction is in order.

First, from a purely practical standpoint, it defies logic to argue that implementation of an invalid law should not be enjoined by the Court.[7] Second, in

---

[5] See ARC of California, 757 F.3d at 988; Pls.' Statement of Undisputed Fact Nos. 9, 10.

[6] Ordinarily a party seeking a permanent injunction must show: 1) the existence of an irreparable injury; 2) remedies at law are inadequate to compensate for that injury; 3) the balance of hardships between plaintiff and defendant tips in favor of a remedy in equity; and 4) the public interest would not be disserved by a permanent injunction. Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 141 (2010); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

[7] The fact that the payment reductions are invalid in their present form, because they were implemented without the requisite approvals, does not mean that the State is precluded from enacting similar rules should it follow the proper process for doing so. Nothing in this Memorandum and Order

1  Emily Q. v. Bonta, 208 F. Supp. 2d 1078 (C.D. Cal. 2001), the Central District, in
2  assessing whether a permanent injunction was proper in a Medicaid Act case like this
3  one, found that to qualify for such an injunction, a Plaintiff need only "establish actual
4  success on the merits, and that the balance of equities favor injunctive relief." Id. at
5  1087, citing Orantes Hernandez v. Thornburgh, 919 F.2d 549, 558 (9th Cir. 1990).  Here,
6  as set forth above, Plaintiffs have indeed established actual success on the merits of
7  their Medicaid Act claim given their failure to satisfy the Section 30(A) standards.
8  Moreover, in the context of the provision of public benefits, the Ninth Circuit has also
9  observed:

> We have several times held that the balance of hardships favors beneficiaries who may be forced to do without needed medical services over a state concerned with conserving scarce resources.

13  M.R. v. Dreyfus, 697 F.3d 706,  737-738 (9th Cir. 2011) (citing, as an example,
14  Independent Living Ctr  of Southern Cal. v. Maxwell, 572 F.3d 644, 659 (9th Cir. 2009)
15  (state budgetary considerations do not, in social welfare cases, constitute a critical public
16  interest that would be injured by injunctive relief)).  Defendants' arguments therefore
17  have no bearing here.
18       Finally, the Court notes that the State has made several other requests.  First, it
19  argues that because the Supreme Court has granted certiorari on a case that may
20  determine whether Defendants have standing under the Supremacy Clause of the
21  United States Constitution to bring a case like this one, granting summary judgment at
22  this juncture would be premature and the case should be stayed pending a decision in
23  that case.  The decision in question, Exceptional Child Center v. Armstrong, 567 F.
24  App'x 496 (9th Cir. 2014) did find, in a Medicaid case, that providers have an implied
25  right of action under the Supremacy Clause to seek injunctive relief against the
26  enforcement or implementation of state legislation, While the Supreme Court did indeed

---

should be construed as expressing any opinion on whether the State can or cannot make the necessary showing should it elect to attempt to do so in the future.

grant certiorari, Ninth Circuit authority at this point, including its decision in this very case, makes it clear that "a private party may bring suit under the Supremacy Clause to enjoin implementation of state legislation allegedly preempted by federal laws." ARC of California, 757 F.3d at 984, n.3.  This is in accord with current Ninth Circuit precedent. See, e.g., Independent Living Center of Southern California v. Shewry, 543 F.3d 1050, 1065 (9th Cir. 2008).  This Court is bound to follow that decision.  Once a panel resolves an issue in a precedential opinion, the matter is deemed resolved unless overturned by the Circuit sitting en banc, or by the Supreme Court.  Hart v. Massanari, 286 F.3d 1155, 1171 (9th Cir. 2011).  Here, as Plaintiffs point out, the State did not even file an en banc request.  Under those circumstances, and given the current state of Ninth Circuit precedent, the Court is bound to follow that law.  The State's Ex Parte Application for Stay is therefore denied.

Second, although the State moves to strike certain evidence as improper, because the Court did not rely on that evidence in reaching its decision herein, that motion is denied as moot.

## CONCLUSION

For all the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 172) is GRANTED.  The Court finds as a matter of law that the subject provider reductions are invalid.  Given that invalidity, the State is permanently enjoined from implementing and/or applying: 1) the so-called "uniform holiday schedule" as currently codified by California Welfare and Institutions Code § 4692; and 2) the "half - day billing rule" set forth in California Welfare and Institutions Code § 4690.6.  The State is further enjoined from making any future changes to payments perceived by providers without complying with the requirements of 42 U.S.C. § 1396(a)(30)(A) and demonstrating that approval has been obtained from the Center for Medicaid Services.
///

1    Defendants' Ex Parte Application to Stay Proceedings (ECF No. 169) and Motion
2 to Strike (ECF No. 180) are DENIED.
3    IT IS SO ORDERED.
4 Dated:  February 11, 2015

*[signature]*

MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT COURT