UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ARC OF CALIFORNIA; UNITED CEREBRAL PALSY ASSOCIATION OF SAN DIEGO,<br><br>Plaintiffs,<br><br>v.<br><br>TOBY DOUGLAS, in his official capacity as Director of the California Department of Health Care Services; CALIFORNIA DEPARTMENT OF HEALTH CARE SERVICES; TERRI DELGADILLO, in her official capacity as Director of the California Department of Developmental Services; CALIFORNIA DEPARTMENT OF DEVELOPMENTAL SERVICES; and DOES 1-100, inclusive,<br><br>Defendants. | No. 2:11-cv-02545-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

Plaintiffs ARC of California ("ARC") and the Cerebral Palsy Association of San Diego ("CPA") (collectively "Plaintiffs") brought suit against the California Department of Health Care Services ("DHCS") and the California Department of Developmental Services ("DDS").[1] ARC is a statewide organization comprised of individuals with

---

[1] Both California agencies are sued through their respective Directors and will be collectively referred to as "Defendants" or the "State" throughout this Memorandum and Order unless otherwise specified.

1

intellectual and developmental disabilities, their families, and their home and community-based service providers. CPA is a non-profit organization serving the needs of individuals with cerebral palsy in San Diego and is affiliated with the National Cerebral Palsy Association. Defendants DHCS and DDS are both involved in administering the provision of support to disabled individuals.

Plaintiffs challenge several of the State of California's implemented changes affecting how it pays for services provided to developmentally disabled individuals under the federally funded Medicaid program. Plaintiffs' original causes of action included claims under Section 30(A) of the Medicaid Act, but in 2015 the Supreme Court determined that Section 30(A) of the Medicaid Act does not confer a private right of action. Armstrong v. Exceptional Child Ctr., Inc., 135 S. Ct. 1378 (2015). Therefore, by Order filed August 29, 2016, (ECF No. 208), this Court dismissed Plaintiffs' Section 30(A) claims as moot. Plaintiffs have several claims remaining against the State, specifically under the Americans with Disabilities Act, the Rehabilitation Act, and Cal. Gov. Code § 11135. Presently before the Court is the State's Motion for Summary Judgment as to those remaining claims. ECF No. 229. For the following reasons, the State's Motion is GRANTED in part and DENIED in part.[2]

**BACKGROUND**

In California, the DHCS is the state agency responsible for administering the federal Medicaid program, known as Medi-Cal. The DDS, however, is responsible for coordinating the provision of services for individuals with developmental disabilities for those covered under the Medicaid Home & Community-Based Services ("HCBS") waiver, as well as under California's Lanterman Act, Cal. Welf. & Inst. Code §§ 4500, et seq., which provides for similar services and supports at the state's own expense.

---

[2] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

2

DDS is accordingly charged with monitoring the 21 regional centers in California who contract out services for compliance with both federal and state law and to ensure that high quality services and supports are being provided. Id. at §§ 4434(a)-(b), 4500.5(d), 4501. DDS is further charged with promoting uniformity and cost-effectiveness in the operation of regional centers. Ass'n for Retarded Citizens v. Dept. of Developmental Servs., 38 Cal. 3d 384, 389 (1985).

Plaintiffs' lawsuit challenges four bills, as enacted by the California Legislature since 2009, which operate to reduce or freeze rates to HCBS providers. The first two bills made percentage reductions in provider rates. Using payment levels from 2003, the Legislature initially enacted a three percent reduction from those rates effective February 1, 2009, through June 30, 2010. That reduction, along with an additional 1.25 percent cut, was ultimately extended through June 30, 2012. After June 30, 2012, the reimbursement reduction was decreased to only 1.25 percent, where it remained until June 30, 2013, at which time it expired entirely and was not reenacted. Any challenge to this percentage reduction claim is consequently now moot. ARC of California v. Douglas, et al, 757 F.3d 975, 982 (9th Cir. 2014).

The third bill, as codified at California Welfare & Institutions Code § 4692, enumerates14 unpaid holidays over the course of each year for which vendors are not reimbursed for many services. That bill has been termed as the "uniform holiday schedule." Fourth and finally, the so-called "half-day billing rule" limits regional centers to payment for only a half day if a patient was present less than 65 percent of a program day. See Cal. Welf. & Inst. Code § 4690.6. The State maintains that those reductions apply to all disabled individuals irrespective of whether they qualify for services under the HCBS waiver or under California's Lanterman Act.

This case was initially stayed pending the outcome of the Supreme Court's grant of certiorari in Douglas v. Independent Living Center of Southern California, Inc., 132 S. Ct. 1204 (2012). Once that stay was lifted, Plaintiffs moved for a preliminary injunction on various grounds, including allegations that the State's billing reductions

3

violated the Medicaid Act. Defendants concurrently moved to dismiss Plaintiffs' Medicaid Act claims on grounds that those claims lacked merit. This Court denied both motions in separate orders issued on July 1, 2013. ECF Nos. 119, 120. Plaintiffs appealed the Court's preliminary injunction ruling on July 29, 2013, and by its decision filed June 30, 2014, the Ninth Circuit reversed and remanded for further proceedings. ARC of California, 757 F.3d 975. Thereafter, on October 10, 2014, in light of the Ninth Circuit's ruling, Plaintiffs filed a motion for partial summary judgment as to their Medicaid Act claim, which the Court granted. ECF No. 172.

Following the Supreme Court's Armstrong decision finding that Section 30(A) of the Medicaid Act does not confer a private right of action, Defendants filed a Motion for Reconsideration (ECF No. 194) and a Request for Leave to File Motion for Summary Judgment (ECF No. 199). The Court granted Defendants' Motion for Reconsideration, vacating its prior order (ECF No. 172) granting partial summary judgment and permanent injunction in its entirety. ECF No. 208. Plaintiffs' Medicaid Act claim, which constituted the first claim in Plaintiffs' Complaint, was then dismissed in its entirety.

Plaintiffs' claims under the Rehabilitation Act of 1973, the Americans with Disability Act, Cal. Gov. Code §§ 11135 and 11139, and 28 U.S.C. § 2201, remain pending. Having granted Defendants' request to file an additional motion for summary judgment. Defendants subsequently filed the present Motion on July 6, 2017. ECF No. 229. Plaintiffs filed an opposition to Defendants' Motion (ECF No. 230) and Defendants filed a subsequent reply (ECF No. 231).

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.
///

Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

Defendants raise several threshold arguments by way of their Motion. They initially claim that Plaintiffs lack associational standing to assert federal claims in the first instance and argue that, even assuming Plaintiffs have associational standing, the authority Plaintiffs cite to support their position is no longer good law. Defendants also assert that, even if Plaintiffs do have associational standing and can cite persuasive

authority, they still fail to raise a triable issue of material fact for their federal claims regarding their members' risk of institutionalization.  Finally, Defendants claim that Plaintiffs' state law claim must be dismissed because it is barred by the Eleventh Amendment.  The Court analyzes Defendants' arguments in turn, and for the reasons that follow, Defendants' Motion for Summary Judgment is DENIED.

### A. As This Court Determined In A Prior Order, Plaintiffs Have Associational Standing To Bring Their Claims.

An organization has associational standing to bring a claim when three elements are satisfied: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." Hunt v. Washington State Apple Advertising Com'n, 432 U.S. 333, 343 (1977).  A member's standing to sue in his or her own right generally requires that the member have suffered an injury-in-fact, such that the injury is both "concrete and particularized" and "actual and imminent;" that there be a causal connection between the plaintiff's injury and the "conduct complained of;" and finally, that it must be likely that the injury is redressable in court. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  In the specific context of Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims, standing is broadly construed—as noted by the Ninth Circuit, "The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits 'are the primary method of obtaining compliance with the Act.'" Doran v. 7-Eleven, Inc., 524 F.3d 1034, 1039-40 (9th Cir. 2008) (quoting Trafficante v. Metro. Life Ins. Co., 409 U.S. 205, 209 (1972)).

Defendants argue in their Motion that Plaintiffs lack associational standing to bring their remaining federal claims under the ADA and the RA.  Specifically, Defendants contend that none of Plaintiffs' members are at "serious risk of institutionalization," arguing that Plaintiffs have failed to name "a single individual with a developmental

1 disability—let alone a consumer-member—that has been harmed" because of
2 Defendants' actions. ECF No. 229-1 at 7-8. Plaintiffs respond by noting that they have
3 submitted 34 declarations detailing harm that Defendants have caused to Plaintiffs'
4 members. ECF No. 230 at 6. Plaintiffs need only show that there has been one
5 violation of any of their members' civil rights under the ADA and the RA to establish
6 associational standing. Doran, 524 F.3d at 1047.

The parties dispute whether Defendants' reduced funding for service providers of disabled individuals, including Plaintiffs' members, is the direct cause of the "harm" Plaintiffs allege. ECF No. 230 at 7. According to Defendants, their actions are not the only possible cause of the harm of increased risk of institutionalization for Plaintiffs' members. ECF No. 229-1 at 9. Plaintiffs respond by arguing that an increased risk of institutionalization is not the only harm alleged in their complaint, and that in fact the reduced quality and availability of "services and supports…disproportionately increase the risks of harm to their health, safety, and welfare." ECF No. 1 ¶ 39; ECF No. 230 at 8-9. In any case, the Ninth Circuit has ruled that a "motivating factor" standard of causation applies in disabled individuals' civil rights cases such as this one, and so Plaintiffs need not show that Defendants' actions were the sole cause of the harm alleged. Head v. Glacier Northwest, Inc. 413 F.3d 1053, 1065 (9th Cir. 2005). Plaintiffs have thus made the requisite showing and therefore have established that they have associational standing to bring their ADA and RA claims.

Further, as Plaintiffs correctly point out, this Court has previously ruled that Plaintiffs have associational standing to bring their ADA and RA claims: "[T]he Ninth Circuit has already recognized the associational standing of organizations like ARC in similar cases . . . . [T]he Court does not find standing to pose a bar to Plaintiffs' claims under the ADA and the Rehabilitation Act." ECF No. 120 at 18. Defendants' Motion for Summary Judgment is therefore DENIED with respect to Plaintiffs' associational standing to bring their ADA and RA claims.

///

## B. The M.R. v. Dreyfus Standard Is Not In Contravention Of Supreme Court Jurisprudence.

The Ninth Circuit has repeatedly held that a "beneficiar[y] of public assistance may demonstrate a risk of irreparable injury by showing that enforcement of a proposed rule may deny them needed medical care." M.R. v. Dreyfus, 697 F.3d 706, 732 (9th Cir. 2012) (internal citations omitted). The Department of Justice's regulations enforcing the ADA and the RA specifically provide a so-called "integration mandate": "A public entity shall administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." 28 C.F.R. § 35.130(d). Although the Supreme Court has noted that a State's "responsibility, once it provides community-based treatment to qualified persons with disabilities, is not boundless," and while the ADA does not require a State to provide a specific "level of benefits to individuals with disabilities," states must nonetheless still "adhere to the ADA's nondiscrimination requirement with regard to the services they in fact provide." Olmstead v. L.C. ex rel Zimring, 527 U.S. 581, 603 & n.14 (1999).

Defendants argue that Dreyfus is not good law because they interpret the case to impose a specific "level-of-care" mandate on the State in violation of Olmstead. ECF No. 229-1 at 10. Specifically, Defendants claim that Dreyfus effectively turns the "integration" mandate into an affirmative "level-of-care" mandate, because Defendants interpret the case to hold that a claimant must show a "serious risk of institutionalization" to prove an ADA violation. According to Defendants, Plaintiffs' ADA and RA claims would effectively impose just such an improper "level-of-care" mandate by seeking to enjoin the State's uniform holiday schedule and half-day billing rule. Defendants contend Plaintiffs' ADA and RA claims must accordingly be dismissed, and that Plaintiffs' reliance on Dreyfus is improper. Plaintiffs, on the other hand, respond with a competing interpretation of the interplay between Dreyfus and Olmstead. Plaintiffs state that the holding of Dreyfus does not establish the "serious risk of institutionalization" standard as the showing necessary to obtain relief under the ADA and RA. Rather, Plaintiffs interpret

Dreyfus as establishing that "the elimination of services that have enabled Plaintiffs to remain in the community violates the ADA." ECF No. 230 at 12 (quoting Dreyfus, 697 F.3d at 734). Plaintiffs further argue that they do not seek to enjoin the State's uniform holiday schedule and half-day billing rule in an effort to impose a "level-of-care" mandate, but rather because the State's policies fail to satisfy the degree of integration required by the ADA.

Plaintiffs have the correct interpretation. Dreyfus remains good law because, despite Defendants' claims otherwise, it does not impose upon states an affirmative standard in violation of Olmstead. Instead, Dreyfus permits an analysis of the degree to which a State reduces services to disabled individuals, and the resulting degree to which that reduction increases an individual's risk of institutionalization. Therefore, Defendants are not entitled to summary judgment on grounds that Plaintiffs' reliance on Dreyfus is improper.

**C. Plaintiffs Have Raised Triable Issues Of Material Fact Regarding Their Members' Risk Of Harm; Summary Judgment Is Therefore Not Appropriate.**

Plaintiffs argue that the reduction in funding for community-based programs for their members leaves the programs "less available, less accessible, and reduces their quality, all to the detriment of the program's beneficiaries." ECF No. 230 at 12. As discussed above, DOJ regulations require that States "administer services, programs, and activities in the most integrated setting appropriate to the needs of qualified individuals with disabilities." Olmstead, 527 U.S. at 592 (citing 28 C.F.R. § 35.130(d)). Defendants argue that Plaintiffs have failed to raise a triable issue of material fact as to any harm imposed on Plaintiffs' members by Defendants' funding reduction. In support of their Motion, Defendants mainly argue that Plaintiffs have been "unable to name a single individual with developmental disabilities…who has been harmed by the uniform holiday schedule, or provide specific facts about their harm." ECF No. 229-1 at 11. Defendants also contend that, since the State has gradually been closing its institutionalization facilities, has imposed a moratorium on new admissions to remaining

facilities, and has provided community day care providers a seven percent pay increase in 2015, it is impossible for Plaintiffs to claim that there is an increased risk of institutionalization for their members. Based on those arguments, Defendants claim that summary judgment in their favor is appropriate.

Plaintiffs have provided substantial evidence of specific instances of harm that Defendants' funding reduction has caused Plaintiffs' members. Throughout the litigation of this case, Plaintiffs have produced statements from family members of disabled individuals who have felt adverse effects of the State's funding reduction, as well as statements from leaders of organizations like local ARC chapters that are aware of how the reduction constrains their resources and their ability to serve disabled individuals like Plaintiffs' members.

The parties here dispute virtually every aspect of the purported effect of Defendants' actions upon Plaintiffs' members. Those disputes include whether any effect exists at all, how the State's funding reduction (or even the subsequent 2015 funding increase) has affected the quality and availability of services provided to disabled individuals like Plaintiffs' members, and whether the reduction in funding has had any effect on the individuals' risk of institutionalization. Indeed, far from demonstrating the lack of any triable issue of fact in this regard, Defendants' Motion instead underscores just how many triable issues of material fact actually exist in this case. Summary judgment is therefore not appropriate.

**D.     The Eleventh Amendment Bars Plaintiffs' State Law Claims.**

A federal court may not enjoin a state official from violating purely state law; this is proscribed by the Eleventh Amendment to the United States Constitution. See, e.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89 (1984). This prohibition also applies to state law claims "brought in federal court under pendent jurisdiction." Id. at 121. Unless a state waives its sovereign immunity and consents to the suit, such a claim is barred "regardless of the nature of relief sought." Id. at 100-01. A federal court's supplemental jurisdiction over a state law claim is not sufficient to abrogate a state's

sovereign immunity. Raygor v. Regents of University of Minnesota, 534 U.S. 533, 541 (2002).

Plaintiffs cite a Ninth Circuit decision which provided that "sovereign immunity does not, however, bar actions to compel a state official's prospective compliance with a plaintiff's federal civil rights." Indep. Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly, 572 F.3d 644, 660 (9th Cir. 2009). Plaintiffs argue that, since they seek prospective injunctive relief for ADA and state civil rights violations, and since a violation of the ADA automatically results in a violation of these California civil rights statutes, that their state law claims are therefore not barred by sovereign immunity. That potential relationship between the ADA and Plaintiffs' state law claim, however, is not enough to avoid the bar of the Eleventh Amendment to the extent Plaintiffs are suing under state law. The Court only has supplemental jurisdiction over Plaintiffs' state law claims, and, as indicated above, that limited jurisdiction does not trump State's sovereign immunity under the Eleventh Amendment. Therefore, Plaintiffs' fourth cause of action, which alleges violations of California's Unruh and Lanterman Acts, is dismissed without prejudice

## CONCLUSION

For all the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 229) is GRANTED as to Plaintiffs' fourth cause of action, which the Court dismisses without prejudice, and DENIED as to Plaintiffs' remaining causes of action.

IT IS SO ORDERED.

Dated: March 28, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE